1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

SHAWN CORY GREEN,

                    Defendant.

Case No. CR20-27 RAJ

ORDER DENYING MOTION TO
REOPEN DETENTION HEARING
AND FOR TEMPORARY RELEASE

## I.    INTRODUCTION AND BACKGROUND

Before the Court is Defendant Mr. Green's motion to reopen his detention hearing under U.S.C. § 3142(f) or, in the alternative, for temporary release under 18 U.S.C. § 3142(i)(3). Mr. Green is charged with two counts of possession of methamphetamine with intent to distribute pursuant to 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A). Mr. Green's initial appearance and arraignment was held on March 2, 2020. Dkt. # 8. At the initial appearance, Mr. Green requested additional time to prepare for his detention hearing which was scheduled for March 5, 2020 and rescheduled to March 9, 2020. Dkt. ## 8, 10. Mr. Green's detention hearing was rescheduled because Mr. Green was housed in a unit at the Federal Detention Center ("FDC") that was in quarantine due to COVID-19 concerns and it was not possible to transport him to the

1  courthouse.[1] After consultation with his counsel, Mr. Green consented to telephonic detention

2  hearing which was obtained on the record.

3      After hearing from the parties, reviewing the pretrial service report, and reviewing the

4  supplemental pretrial service report, the Court held that Mr. Green should be detained because he

5  posed a risk of nonappearance due to his past failures to appear, criminal activity while under

6  state supervision, and because the pending criminal charges carry a rebuttable presumption that

7  there are no conditions or combination of conditions that will reasonably assure Mr. Green's

8  appearance at future court hearings while addressing the danger to other persons or the

9  community. Dkt. # 14 (Detention Order). The Court made its ruling without prejudice to Mr.

10  Green reopening the detention hearing when it can be held in person, in the courtroom.

11                              **II.     ANALYSIS**

12      Mr. Green moves to reopen his detention hearing based on COVID-19 concerns arguing

13  that the pandemic drastically alters the calculus relied upon to detain him. Mr. Green also points

14  out that the Court issued the original detention order without prejudice to reopening it. The Court

15  is still operating under several general orders regarding the closing of the courthouse. As relevant

16  here, General Order 03-20 explains that in-court hearings wherein all parties are in the same

17  courtroom is not feasible given the guidance on COVID-19. Although General Order 03-20

18  provides for alternative levels of access to the court (i.e., video conferencing and telephonic

19  hearings), the Court has already conducted Mr. Green's detention hearing via telephonic means

20  and does not believe that a video conferencing hearing, although a higher level of access, is

21  necessary at this time. The Court's order that the detention be without prejudice was based on a

22

23  _____

[1] The government correctly contends that the telephonic hearing was necessary because Mr. Green was housed in a quarantined unit but incorrectly cites to this Court's General Order 02-20 as to the need for the telephonic hearing. General Order 02-20, limiting court operations, was not signed until March 17, 2020, eight days after Mr. Green's detention hearing.

ORDER DENYING MOTION TO REOPEN
DETENTION HEARING AND FOR TEMPORARY
RELEASE - 2

1    desire to afford Mr. Green the opportunity to be brought to the courthouse and appear in person

2    for his detention hearing. At the time the order was filed, however, the closing of the courthouse

3    for the foreseeable future was not contemplated. Accordingly, the Court does not find that a

4    reopening of the detention hearing on that basis is warranted.

5           Next, the Court must consider a new basis for reopening the detention as argued by

6    defense counsel in his motion: COVID-19. Mr. Green offers a lengthy and compelling overview

7    of the pandemic and the risks associated with the spread of the infection in detention facilities

8    due to crowding, lack of medical care, and limited access to soap and water. *See generally* Mot.

9    (Dkt. # 15) at 2-8 (noting that courts in other jurisdiction have found COVID-19 to be a

10   compelling basis for release). Mr. Green's motion provides little information specific to Mr.

11   Green but rather relies largely on the overall conditions at the FDC and the inherent risk

12   presented by the current pandemic. In his supplemental reply in support of his motion, Mr. Green

13   offers that he is 42 years old and that new information demonstrates that even people in their 30s

14   and 40s are at a high risk of dying from strokes caused by COVID-19. *See* Supp. Resp. to Mot.

15   (Dkt. # 19) at 6.

16          The government opposes Mr. Green's release. Since the original detention hearing in this

17   matter, the government has more fully developed the context under which Mr. Green is alleged

18   to have committed these crimes. Gov't Opp. (Dkt. # 17) at 2. As proffered by the government,

19   Mr. Green and his girlfriend were pulled over in January 2018, a search of their vehicle

20   uncovered 1.75 pounds of methamphetamine. *Id*. Mr. Green was charged with this drug offense

21   in August 2018 by the Snohomish County Prosecutor's Office and an arrest warrant was issued

22   in September 2018. *Id.* The arrest warrant remained outstanding for over a year. *Id.* In September

23   2019, Mr. Green was pulled over again on Whidbey Island and provided a false name to the

ORDER DENYING MOTION TO REOPEN
DETENTION HEARING AND FOR TEMPORARY
RELEASE - 3

1    trooper. *Id.* The trooper attempted to arrest Mr. Green for obstruction but Mr. Green resisted

2    arrest and an altercation ensued. When Mr. Green was detained and searched the trooper found

3    over 500 grams of methamphetamine and 74 grams of heroin in his backpack. *Id.* at 2-3.

4          Although the above incident is concerning, what is of great concern to the Court is the

5    fact that Mr. Green was under supervision by the Washington State Department of Corrections

6    ("DOC") during this time and had been since 2014. Gov't Opp. at 3. As set forth by the

7    government, Mr. Green appears to have absconded from DOC supervision between November

8    2014 and January 2016; February 2016 and April 2017; July 2017 and December 2017; January

9    2018 and May 2018; and July 2018 and September 2019. *Id.* That amounts to over 35 months of

10   failing to abide by the terms of his supervision over a six-year period. Mr. Green's original term

11   of supervision was originally set at only 12 months.

12         **A.      Reopening the Detention Hearing Due to COVID-19**

13         A detention hearing may be reopened if the Court finds that "information exists that was

14   not known to the movant at the time of the hearing" and that such information has "a material

15   bearing" on the issues of whether defendant presents a flight risk and/or a danger to the

16   community. *See* 18 U.S.C. § 3142(f). Most courts that have considered this issue in light of

17   COVID-19 have found that the pandemic alone does not "in and of itself raise a change in

18   circumstances that has a 'material bearing' on whether there are conditions of release for this

19   Defendant that will reasonably assure the safety of the community." *United States v. Dodd*, 2020

20   WL 1547419 at *2 (D. Minn. Apr. 1, 2020) (emphasis in original); *see also United States v.*

21   *Flores-Lopez*, CR19-203-RSM (WAWD Apr. 14, 2020) (As an initial matter, the Court agrees

22   with the Government that the current COVID-19 pandemic alone was not a valid basis to reopen

23   the issue of detention.")

ORDER DENYING MOTION TO REOPEN
DETENTION HEARING AND FOR TEMPORARY
RELEASE - 4

1    As noted recently by the Honorable Thomas S. Zilly, "District courts across the country

2  have been inundated with motions similar to the one now before the Court. Indeed, on April 10,

3  2020, the day that defendant's motion noted for consideration, at least five orders denying

4  motions brought under § 3142(f) were issued in various districts, and since then, no less than

5  nine more have been entered." *United States v. McNight*, 2020 WL 1872412 at *1, CR18-16-

6  TSZ (WAWD Apr. 15, 2020) (cataloging cases wherein courts denied motion to reopen

7  detention based on COVID-19). In each of the catalogued cases cited by Judge Zilly, the

8  defendant's request to reopen his or her detention hearing due solely to the COVID-19 pandemic

9  was denied. Here, the Court made its initial detention decision based largely on the allegations

10  that Mr. Green committed these crimes while on DOC supervision. The new information

11  provided to the Court by the government regarding the over 35 months of absconding from DOC

12  supervision only reinforces the Court's original detention decision. Even if the Court were to

13  find that the COVID-19 pandemic was a sufficient reason to reopen the detention hearing, Mr.

14  Green's history of failing to abide by supervision together with the nature of the crimes charged

15  and his extensive criminal history support this Court's original decision to detain Mr. Green.

16    **B.    Temporary Release**

17    Mr. Green also requests temporary release pursuant to 18 U.S.C. § 3142(i). Under

18  Section 3142(i), temporary release may be granted if the Court determines that release is

19  "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C.

20  § 3142(i)(4). The relief authorized by § 3142(i) is to be used "sparingly." *McKnight*, 2020 WL

21  1872412, at *2–3 (citing *United States v. Boatwright*, ⸺ F. Supp. 3d ⸺, 2020 WL 1639855

22  at *4 (D. Nev. Apr. 2, 2020)). Courts have recognized that "little guidance exists" concerning

23  what qualifies as a "compelling reason" for temporary release, but such motions have been

ORDER DENYING MOTION TO REOPEN
DETENTION HEARING AND FOR TEMPORARY
RELEASE - 5

granted when the detainee was suffering from terminal illness or serious injuries, like gunshot wounds, for which the Bureau of Prisons could not adequately provide medical care. *Boatwright*, 2020 WL 1639855 at *4.

Due to the COVID-19 pandemic, courts across the country have analyzed what "compelling reason" for temporary release means in the context of this public health crisis. Most courts that have addressed this issue, including this one, have applied the four factors first articulated in *United States v. Clark*, ⸺ F. Supp. 3d ⸺⸺, 2020 WL 1446895 (D. Kan. Mar. 25, 2020). *See McKnight*, 2020 WL 1872412 at *2–3; *see also United States v. Miller*, 2020 WL 1864633 at *2-3, (D. Mont. Apr. 14, 2020); *United States v. Hussein*, 2020 WL 1853656 at *4 (D. Minn. Apr. 13, 2020); *United States v. Lake*, 2020 WL 1852435 (D. Colo. Apr. 13, 2020); *Boatwright*, 2020 WL 1639855 at *4-8. In considering a Section 3142(i) motion in the context of COVID-19, the court in *Clark* evaluated (i) the original grounds for the defendant's pretrial detention, (ii) the specificity of the defendant's stated COVID-19 concerns, (iii) the extent to which the proposed release plan is tailored to mitigate, rather than exacerbate, the COVID-19 risks to the defendant, and (iv) the likelihood that the defendant's release would increase the COVID-19 risks of others. *McKnight*, 2020 WL 1872412 at *2–3 (citing *Clark*, 2020 WL 1446895 at *3).

None of the *Clark* factors weigh in favor of a temporary release in this case. The original grounds for Mr. Green's detention have only been reinforced with the additional information provided by the government. There is little specificity to Mr. Green's concerns regarding COVID-19. As far as the Court can discern, Mr. Green is a healthy 42-year-old male. While the Court recognizes that recent deaths by seemingly healthy 30- and 40-year-old individuals is alarming, it does not create a specific risk for Mr. Green. The release plan proposed by defense

ORDER DENYING MOTION TO REOPEN
DETENTION HEARING AND FOR TEMPORARY
RELEASE - 6

counsel to live with his girlfriend is problematic as he was living with her when these crimes

allegedly occurred, and the government has some evidence that Mr. Green's girlfriend was also

dealing drugs. Finally, with respect to the fourth *Clark* factor, the Court does have concerns that

given Mr. Green's inability to follow the directions of his DOC officer, the allegations that he

gave a false name when he was arrested, and his numerous failures to appear and driving while

license suspended, leads the Court to believe that Mr. Green is not likely to abide by any stay at

home orders and could pose an increased risk in the community.

### III.   CONCLUSION

For the reasons stated above, the Court DENIES Mr. Green's motion to reopen his

detention hearing under U.S.C. § 3142(f) or, in the alternative, for temporary release under 18

U.S.C. § 3142(i)(3). The Clerk is directed to send copies of this order to the parties and to the

Honorable Richard A. Jones.

Dated this 29th day of April, 2020.


MICHELLE L. PETERSON
United States Magistrate Judge